# THE

# NEW YORK SUPPLEMENT

## VOLUME 158

DIMOND–WARREN MOTOR CO., Inc., v. HERFF–BROOKS CORP.

(Supreme Court, Appellate Term, First Department. April 3, 1916.)

CORPORATIONS ☞668(5) — FOREIGN CORPORATIONS — SERVICE — "MANAGING AGENT."

Where a foreign automobile manufacturing corporation has no permanent office in New York, and it is not shown that it is making any sales, except through dealers, or transacting any business in the state, service of summons, in an action against the corporation, upon its nonresident employé, described by the corporation in its contract for space as its "representative" at an automobile show in New York, and in a letter as its "district manager," but not empowered to make contracts binding upon the corporation, unless approved and signed by it, will be vacated; it not being service upon a "managing agent."

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2611; Dec. Dig. ☞668(5).

For other definitions, see Words and Phrases, First and Second Series, Managing Agent.]

Pendleton, J., dissenting.

Appeal from City Court of New York, Special Term.

Action by the Dimond-Warren Motor Company, Incorporated, against Herff-Brooks Corporation. From an order denying defendant's motion to set aside a service of summons, it appeals. Reversed and rendered.

Argued March term, 1916, before LEHMAN, WHITAKER, and PENDLETON, JJ.

Charles W. Atwater, of New York City, for appellant.
William R. Hill, of New York City, for respondent.

LEHMAN, J. The defendant moved to vacate the service of a summons in this action. The service was made on one Fred C. Carter, who is concededly not an officer of the corporation. The plaintiff, however, claims that Carter is "a managing agent of the corporation." It appears from the record that the corporation maintains no permanent office or factory in the state of New York. It did, however, rent space in the National Automobile Show in this city for nine days in December. The contract for the rental of the space states:

"The representative of the exhibitor who will have charge of the space and exhibit at New York is Fred C. Carter."

It further appears that the corporation occupied the space with an exhibit; that Carter was personally exhibiting and explaining the Herff-Brooks cars to the patrons of the show and to prospective purchasers. It further appears that this action is based upon a contract whereby the defendant, designated therein as the manufacturer, agreed to sell to the plaintiff, who is designated therein as dealer, from 3 to 100 Herff-Brooks automobiles, and whereby the defendant granted to the plaintiff the right to sell "Herff-Brooks motor cars in Greater New York and adjacent territory in New York and New Jersey." This contract is signed:

"Herff-Brooks Corporation, per Fred C. Carter. Approved: H. H. Brooks, General Sales Manager. Accepted: Dimond-Warren Motor Co., Inc., J. Renwick Dimond, Treas., Dealer, Arthur C. Warren, Sect."

J. Renwick Dimond alleges in his affidavit that:

This "contract was signed by the *plaintiff* in the city of New York and was for an agency, including Greater New York, of the plaintiff's car. All the negotiations concerning said contract on behalf of the defendant were made with Frederick C. Carter, the person upon whom the summons was served and the person whose name appears on the contract, and *deponent* had no negotiations prior to the execution of said contract or thereafter with any other person on behalf of the defendant, and knew of no other person."

I have italicized the words "plaintiff" and "deponent," because I consider these words significant in view of the fact that the contract recites that it is made in the city of Indianapolis, state of Indiana, that it is approved by H. H. Brooks, general sales manager, and that the defendant has also submitted an affidavit by Arthur Warren, who also signed the contract as secretary of the plaintiff, in which *he* states:

"For the most part negotiations in relation to said contract on behalf of the Dimond-Warren Motor Company, Incorporated, were carried on *by me*. Prior to the signing of said contract I went to Indiana to see the factory where Herff-Brooks automobiles are made, and had conferences there with Mr. H. H. Brooks, who, I am informed, was then general sales manager of the Herff-Brooks Corporation. At that time I knew that the Herff-Brooks Corporation was not bound by what Mr. Fred C. Carter might say unless or until the O. K. or approval of the Herff-Brooks Corporation had been given."

It further appears that in August, 1915, the defendant had some correspondence with the plaintiff's attorney concerning this contract, and on August 13th the defendant wrote:

"Some time in December, and just before the New York show, the Dimond-Warren Company moved into a new store and changed their name to the Dimond-Apperson Motor Car Company. During the New York show they refused to give us any assistance whatever, although *our Mr. Carter, who is district manager for that territory*, requested them to do so."

Upon these facts, and especially upon the admission contained in this letter, the learned justice at Special Term has held that Fred C. Carter was "a managing agent of the corporation." This evidence must, however, be read in connection with the undisputed proof of the defendant, which shows that the corporation has no permanent office in New York; that Fred C. Carter is not a resident of New York, but resides in Cambridge, Mass.; that he makes no contracts

binding upon the defendant, except upon the defendant's form of contract, and which are not binding until approved and signed by the defendant corporation.   It seems to me that upon this record the plaintiff has clearly failed to prove that Carter is a managing agent of the defendant.

The general definition of the term "managing agent" has been laid down in the Court of Appeals, in the case of Taylor v. G. S. P. Ass'n, 136 N. Y. 343, 32 N. E. 992, 32 Am. St. Rep. 749:

"A managing agent must be some person invested by the corporation with general powers involving the exercise of judgment and discretion, as distinguished from an ordinary agent or attorney, who acts in an inferior capacity and under the direction and control of superior authority, both in regard to the extent of his duty and the manner of executing it."

In the case of Palmer v. Chicago Evening Post, 85 Hun, 403, 32 N. Y. Supp. 992, the General Term explained this decision, and, while adopting the definition in a general way, it somewhat limited its application.   In the recent case of Beck v. North Packing Co., 159 App. Div. 418, 144 N. Y. Supp. 602, the Appellate Division of this Department again, however, quoted this definition with approval and followed it.   That case and the cases therein cited, especially Vitolo v. Bee Publishing Co., 66 App. Div. 582, 73 N. Y. Supp. 273, and Fontana v. Post Publishing Co., 87 App. Div. 233, 84 N. Y. Supp. 308, conclusively establish that Carter was not the defendant's managing agent within the meaning of the statute.   The defendant in the case before us is a manufacturing corporation.   It is not shown that it is making any sales, except through dealers, or transacting any business here.   Carter is not a resident, and is not shown to have authority to bind the corporation in any way.   He is apparently not a general agent of the corporation, nor a managing agent in this state, for it is not shown that the corporation is doing business here.   The only possible basis for denying the order must be that the defendant itself described him as its "representative" at the show, in the contract for space and as "district manager" for the territory around New York City, in the letter of August 13th.   He might, however, be a representative of the company at the show, and the "district manager" in charge of the territory covered by dealers, and yet not be a managing agent of the corporation.   In the case of Coler v. P. B. Co., 146 N. Y. 281, 40 N. E. 779, and in the case of Vitolo v. Bee Publishing Co., supra, it was expressly held:

"That proof which shows only that the claimed managing agent is a representative of the defendant for some purpose is not sufficient upon which to predicate the fact that he is a managing agent, within the meaning of the section of the Code authorizing service to be made upon him."

Order should therefore be reversed, with $10 costs and disbursements, and motion to vacate granted.

WHITAKER, J., concurs.   PENDLETON, J., dissents.